## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ESSENCE HEALTHCARE, INC.<br><br>               Plaintiff,<br><br>    vs.<br><br>DSM USA INSURANCE COMPANY, INC.,<br>DENTAQUEST USA INSURANCE COMPANY, INC.,<br>and DENTAQUEST OF FLORIDA, INC.<br><br><br>              Defendants. | Case No.<br><br>**Jury Trial Demanded** |

## <u>COMPLAINT</u>

Plaintiff Essence Healthcare, Inc. ("**Essence**") by and through its undersigned attorneys, Alston & Bird LLP, hereby sets forth its Complaint against the defendants DSM USA Insurance Company, Inc., DentaQuest USA Insurance Company, Inc., and DentaQuest of Florida, Inc. (collectively "**DentaQuest**"), and alleges as follows:

## <u>NATURE OF THE CASE</u>

1.      In early 2023, Essence, a Medicare Advantage plan provider looking to expand its dental coverage, solicited bids from various dental service providers for dental services to be provided to Essence plan members under its Medicare Advantage plans for plan year 2024.

2.      On April 20, 2023, DentaQuest, who had an existing relationship with Essence to provide dental services to its Medicare Advantage plan members, responded to Essence's request for proposals with a rate structure proposal for dental services for plan year 2024.  This proposed rate structure envisioned Essence and DentaQuest sharing equally (50%) all profits resulting from dental services provided. Under the same rate structure, DentaQuest proposed that Essence incur 100% of the risk for any losses stemming from any overpayment by the plan for any members'

dental services.

3.    That same day, Essence rejected DentaQuest's proposed rate structure and informed DentaQuest during a video conference that, based on the other rate structures it had received, in order for DentaQuest's bid to be competitive, the rate structure would need to allocate 100% of the risk of loss to DentaQuest, not Essence.

4.    Recognizing that it had to match a competing rate structure to assume 100% risk of loss to win Essence's partnership, on April 21, 2023, DentaQuest emailed a revised rate structure to Essence, removing 100% of the risk of loss to Essence and proposing that DentaQuest (rather than Essence) assume 100% risk of loss with the 50/50 gain share between Essence and DentaQuest remaining intact (the "**April 21 Structure**").

5.    Shortly thereafter, Essence accepted DentaQuest's bid (including the April 21 Structure) and informed DentaQuest that it would be Essence's exclusive dental service provider for plan year 2024.

6.    In June 2023, Essence submitted its Medicare Advantage bid to the Centers for Medicare & Medicaid Services ("**CMS**"), wherein Essence detailed its Medicare Advantage plan, including DentaQuest's exclusive provision of dental services and the April 21 Structure.

7.    As required by CMS, Essence attested to the veracity of its Medicare Advantage bid.

8.    On August 15, 2023, and during a routine review of the benefits that were enumerated in the DentaQuest bid, DentaQuest informed Essence that it did not intend to honor the April 21 Structure in favor of its prior proposal, which had Essence absorbing 100% of the risk of loss.

9.    After weeks of discussion where Essence implored DentaQuest not to walk back

4898-8394-8587, v. 1

the agreed April 21 Structure because of the verification made to CMS and the financial harm that would befall Essence, DentaQuest refused and then stopped engaging on the topic altogether.

10.  Unfortunately for Essence, at this point, it was too late to find another dental service provider, as Essence was just days away from Medicare Annual Enrollment Period ("AEP") and Essence had already publicly marketed and significantly invested in the benefit and its partnership with DentaQuest for dental services in 2024.

11.  Out of time to find an alternate provider, Essence was forced to implement a self-insured rate structure instead of the previously agreed April 21 Structure.

12.  After the 2024 claims experience was complete, the forced implementation of the self-insured structure resulted in Essence suffering significant harm and financial loss.

13.  As a result of DentaQuest's bait-and-switch, Essence sustained in excess of $16,700,000 in damages.

## PARTIES

14.  Plaintiff Essence is incorporated under the laws of Missouri with its principal place of business in Maryland Heights, Missouri. Essence is an affiliate of Lumeris Healthcare Outcomes, LLC. Essence is also a wholly owned subsidiary of Lumeris Group Holdings Corporation (together with Lumeris Healthcare Outcomes, LLC, "**Lumeris**").

15.  Lumeris is incorporated under the laws of Delaware with its principal place of business in Maryland Heights, Missouri.

16.  Upon information and belief, Defendant DSM USA Insurance Company, Inc. is incorporated under the laws of Pennsylvania with its principal place of business in Wellesley Hills, Massachusetts.

17.  Upon information and belief, Defendant DentaQuest USA Insurance Company,

4898-8394-8587, v. 1

Inc. is incorporated under the laws of Texas with its principal place of business in Wellesley Hills, Massachusetts.

18.     Upon information and belief, Defendant DentaQuest of Florida, Inc. is incorporated under the laws of Florida with its principal place of business in Wellesley Hills, Massachusetts.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

20.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) because DentaQuest resides in this district.

21.     DentaQuest's ongoing conduct of business in this judicial district constitutes purposeful availment of the privileges of doing so and subjects DentaQuest to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

### I.     Medicare Advantage

#### a.  Medicare Advantage Background

22.     Medicare is a federal government program, overseen by CMS, that provides health insurance coverage to qualified disabled persons and persons ages 65 and older. The standard Medicare program provides Medicare beneficiaries with a traditional fee-for-service package that covers medically necessary care received from nearly any hospital or doctor in the country.

23.     As an alternative to the traditional fee-for-service plan, Medicare recipients can elect to receive their Medicare benefits through private insurance companies that administer Medicare Advantage plans. Medicare Advantage plans are health plans administered by private health insurance companies that contract with CMS to offer eligible beneficiaries plans that have

4

the traditional benefits of Medicare, as well as other additional potential benefits. Unlike traditional Medicare, which covers Medicare benefits provided by any provider that accepts Medicare, Medicare Advantage beneficiaries typically can only receive care from doctors and hospitals within their plan's network.

24.     Private health insurance companies that want to offer Medicare Advantage plans must bid for the right to do so. If an insurer's bid succeeds, CMS and the private health insurance company enter into a contract whereby the private health insurance company agrees to cover the same services as Medicare, in addition to whatever supplemental services the private health insurance company chooses to offer.

25.     In order to contract with CMS, the private insurance companies must prepare and submit financial bids each year to CMS. In addition to the bid amount itself, the private health insurance company must submit a detailed package to CMS including the specific benefits and cost sharing amounts their plans will cover.

26.     Additionally, the private health insurance company must submit a detailed financial breakdown of how the plan arrived at the bid amount, with an actuarial basis provided for the bid amount.

27.     The process of compiling the bids, and the relevant documentation, takes months with the bids becoming due to CMS the first Monday of June.

28.     After the bids are submitted, CMS reviews the bids and determines if they are reasonable. In September, CMS executes contracts with Medicare Advantage organizations whose bids are approved and otherwise meet CMS requirements.

29.     Medicare's AEP takes place each year from October 15 through December 7. During this time, beneficiaries can switch from traditional Medicare to Medicare Advantage, and

5

vice versa, or they can join, drop, or switch to another Medicare Advantage plan.

       *b.  Essence's Medicare Advantage Plan*

30.    Essence is a health insurance company that provides Medicare Advantage plans to its members.

31.    Each year, Essence creates a Medicare Advantage plan to offer to its members. Since Essence does not offer dental services independently, when creating its annual Medicare Advantage plan to submit to CMS, Essence solicits bids from multiple dental service providers for dental services to be provided to Essence plan members under Essence's Medicare Advantage plans for that year.

32.    During a request for proposals process, the interested dental service providers then respond to Essence with bids detailing what dental services could be provided to members, the cost of such services, and how the risks would be allocated between Essence and the dental service provider.

33.    Essence then reviews the bids, selects a dental insurance provider to be incorporated into its Medicare Advantage plan, and contracts with the dental insurance provider to finalize the nature of the agreement all in the same year—the year before the plan takes effect.

34.    Once Essence finalizes the terms of the engagement with the dental service provider, Essence prepares its final Medicare Advantage plan, detailing the terms of the agreement made with the dental service provider, and submits its final Medicare Advantage bid to CMS.

**II.**    **Essence's 2024 Medicare Advantage Bid**

       *a.  DentaQuest's Initial Rate Structures Were Unacceptable*

35.    In March and April 2023, Essence solicited bids from multiple dental service providers for dental services to be provided to Essence plan members under the Essence Medicare Advantage plan for plan year 2024.

6

36.     DentaQuest had been Essence's dental service provider beginning in July 2018, when DentaQuest and Lumeris signed a Dental Services Agreement ("**DSA**"), and each subsequent year, as memorialized by amendments to that DSA.

37.     Although Essence had a prior relationship with DentaQuest, Essence sought bids from multiple dental service providers each year to ensure it contracted with the dental service provider that would offer it the best benefits and rates for its members.

38.     After some initial exchanges with DentaQuest, on April 10, 2023, Essence received an email with the below proposal from DentaQuest regarding rates for dental services for plan year 2024, wherein DentaQuest proposed a 50/50 risk share and gain share for both Essence and DentaQuest.[1]

| Company Name | OSB | Coverage Option | Allowance | Combined Allowance | In-Network Co-Insurance | Out-Of-Network Co-Insurance | Rate³ |
|---|---|---|---|---|---|---|---|
| MO IL Essence Advantage (HMO) | NA | Option Two | $1,000 | Y | 100/100/100 | NA | $32.84 |
| MO IL Essence Advantage (HMO) | NA | Option Two | $2,000 | Y | 100/100/100 | NA | $36.27 |
| MO IL Essence Advantage (HMO) | NA | Option Two | $3,000 | Y | 100/100/100 | NA | $37.48 |
| MO IL Essence Advantage (HMO) | NA | Option Two | $4,000 | Y | 100/100/100 | NA | $39.06 |
| MO IL Essence Advantage (HMO) | NA | Option Two | $5,000 | Y | 100/100/100 | NA | $40.89 |
| MO IL Essence Advantage (HMO) | OSB | Option Two | $1,000 | NA | 100/NA/NA | NA | $37.10 |
| MO IL Essence Advantage (HMO) | OSB | Option Two | $2,000 | NA | 100/NA/NA | NA | $41.37 |
| MO IL Essence Advantage (HMO) | OSB | Option Two | $3,000 | NA | 100/NA/NA | NA | $42.71 |
| MO IL Essence Advantage (HMO) | OSB | Option Two | $4,000 | NA | 100/NA/NA | NA | $43.55 |
| MO IL Essence Advantage (HMO) | OSB | Option Two | $5,000 | NA | 100/NA/NA | NA | $46.71 |
| MO IL Essence Advantage Choice (PPO) | NA | Option Two | $1,000 | Y | 100/100/100 | 50/50/50 | $32.53 |
| MO IL Essence Advantage Choice (PPO) | NA | Option Two | $2,000 | Y | 100/100/100 | 50/50/50 | $36.27 |
| MO IL Essence Advantage Choice (PPO) | NA | Option Two | $3,000 | Y | 100/100/100 | 50/50/50 | $37.48 |
| MO IL Essence Advantage Choice (PPO) | NA | Option Two | $4,000 | Y | 100/100/100 | 50/50/50 | $39.06 |
| MO IL Essence Advantage Choice (PPO) | NA | Option Two | $5,000 | Y | 100/100/100 | 50/50/50 | $41.22 |
| MO IL Essence Advantage Choice Plus (PPO) | NA | Option Two | $1,000 | Y | 100/100/100 | 50/50/50 | $32.53 |
| MO IL Essence Advantage Choice Plus (PPO) | NA | Option Two | $2,000 | Y | 100/100/100 | 50/50/50 | $36.27 |
| MO IL Essence Advantage Choice Plus (PPO) | NA | Option Two | $3,000 | Y | 100/100/100 | 50/50/50 | $37.48 |
| MO IL Essence Advantage Choice Plus (PPO) | NA | Option Two | $4,000 | Y | 100/100/100 | 50/50/50 | $39.06 |
| MO IL Essence Advantage Choice Plus (PPO) | NA | Option Two | $5,000 | Y | 100/100/100 | 50/50/50 | $41.22 |
| MO IL Essence Advantage Plus (HMO) | NA | Option Two | $1,000 | Y | 100/100/100 | NA | $32.84 |
| MO IL Essence Advantage Plus (HMO) | OSB | Option Two | $2,000 | NA | 100/NA/NA | NA | $41.37 |
| MO IL Essence Advantage Plus (HMO) | OSB | Option Two | $3,000 | NA | 100/NA/NA | NA | $42.71 |
| MO IL Essence Advantage Plus (HMO) | OSB | Option Two | $4,000 | NA | 100/NA/NA | NA | $44.59 |
| MO IL Essence Advantage Plus (HMO) | OSB | Option Two | $5,000 | NA | 100/NA/NA | NA | $46.71 |
| MO IL Essence Advantage Select (HMO) | NA | Option Two | $1,000 | Y | 100/100/100 | NA | $32.55 |
| MO IL Essence Advantage Select (HMO) | NA | Option Two | $2,000 | Y | 100/100/100 | NA | $36.60 |
| MO IL Essence Advantage Select (HMO) | NA | Option Two | $3,000 | Y | 100/100/100 | NA | $37.50 |
| MO IL Essence Advantage Select (HMO) | NA | Option Two | $4,000 | Y | 100/100/100 | NA | $39.09 |
| MO IL Essence Advantage Select (HMO) | NA | Option Two | $5,000 | Y | 100/100/100 | NA | $40.92 |
| MO IL Essence Dual Advantage (HMO D-SNP) | NA | Option Two | $1,000 | Y | 100/100/100 | NA | $33.94 |
| MO IL Essence Dual Advantage (HMO D-SNP) | NA | Option Two | $2,000 | Y | 100/100/100 | NA | $37.84 |
| MO IL Essence Dual Advantage (HMO D-SNP) | NA | Option Two | $3,000 | Y | 100/100/100 | NA | $38.78 |
| MO IL Essence Dual Advantage (HMO D-SNP) | NA | Option Two | $4,000 | Y | 100/100/100 | NA | $40.76 |
| MO IL Essence Dual Advantage (HMO D-SNP) | NA | Option Two | $5,000 | Y | 100/100/100 | NA | $42.67 |
| MO IL Essence Dual Advantage (HMO D-SNP) | NA | Option Two | $6,000 | Y | 100/100/100 | NA | $43.00 |
| | | | | | | | |
| **Risk Corridor Arrangement** | | | | | | | |
| DLR < 85% → 50% to Plan | | | | | | | |
| DLR > 100% → 50% to DQ | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| ³ Subject to Risk Corridor Arrangement above. | | | | | | | |

---

[1] In DentaQuest's bid communications, Essence is identified as the "Plan."

4898-8394-8587, v. 1

39.     In a 50/50 risk share and gain share arrangement, Essence and DentaQuest would evenly share both the profits and the losses incurred when adjudicating claims for dental services.

40.     On April 18, 2023, Essence shared feedback with DentaQuest on the competitiveness of their initial rate structure against other proposed rate structures that Essence had received from an alternate provider ("**Alternate Provider**").

41.     On April 20, 2023, Alexander Rico, DentaQuest's National Accounts Senior Client Consultant, emailed Essence with the below proposed rate structure, which had Essence taking on 100% of the risk share.



42.     Essence rejected this rate structure because it would require Essence to assume 100% of the losses incurred if the actual cost of the dental care provided to the member exceeded

4898-8394-8587, v. 1

what was paid for the service. In other words, Essence rejected this rate structure because it required Essence to pay all dental costs above a certain threshold set by DentaQuest.

43.    Such a structure was not only uncompetitive with others Essence received from the Alternate Provider, but it was also impractical since only DentaQuest was in a position to actually know the cost of the dental services it intended to provide.

44.    Later, on April 20, 2023, at DentaQuest's request, Dylan Strecker (Lumeris's Vice President of Medicare Advantage for Lumeris), and Raj Pradhan (Essence's Director of Contracting and Network Development) had a video conference with Dave Kaluhiokalani (DentaQuest's Vice President of Medicare Advantage and National Accounts). During that video conference, Mr. Strecker and Ms. Pradhan shared feedback on the competitiveness of DentaQuest's bid. Specifically, they explained to Mr. Kaluhiokalani that Essence had received considerably more favorable fully capitated rates[2] from the Alternate Provider which DentaQuest would have to match to remain competitive in the bidding process, and in particular, that DentaQuest would need to provide fully capitated rates if they wanted to win the bid. Mr. Strecker and Ms. Pradham also explained that DentaQuest would have to assume 100% risk of loss as this was part of the rate structure offered by the Alternate Provider.

45.    In response, Mr. Kaluhiokalani said that DentaQuest intended to propose fully capitated rates in its rate structure, and that DentaQuest would send Essence a revised proposal providing for 100% downside risk to DentaQuest with a 50/50 gain share between Essence and DentaQuest.

---

[2] "Full capitation" is a healthcare payment model where a provider receives a set amount of money per patient to cover all or some of their healthcare needs over a period of time. In this model, the provider assumes all financial risk for the patient's care.

   b.  *DentaQuest Fraudulently Induces Essence Into Selecting It As Its Exclusive Dental Provider For The 2024 Medicare Advantage Bid*

46.     On April 21, 2023, Brisa Younes, DentaQuest's Director of Medicare Advantage Performance and National Accounts, sent the below email to Mr. Strecker on behalf of Mr. Rico, "per [the April 20th] discussion," where DentaQuest removed 100% of the risk of loss to Essence and proposed a 100% risk to DentaQuest with a 50/50 gain share between Essence and DentaQuest, *i.e.*, the April 21 Structure. Not surprisingly, and as expressly acknowledged in the transmittal email itself, this rate structure matched the rate structure Mr. Kaluhiokalani conveyed to Mr. Strecker and Ms. Pradhan a day earlier during the video conference.



47.     As a direct result of DentaQuest revising its proposal to adopt the April 21 Structure and match the competing proposal from the Alternate Provider, Essence informed DentaQuest that

4898-8394-8587, v. 1

it that it had been selected as Essence's exclusive dental services provider for plan year 2024.

48.     As required, during the first Monday of June 2023, Essence submitted its finalized bid to CMS, which listed DentaQuest as Essence's exclusive dental service provider, and included the April 21 Structure.

49.     As required by CMS, Essence attested to the accuracy of its bid and the information contained therein.

**III.     DentaQuest Walks Back The April 21 Structure Forcing Essence To Self-Insure Resulting In Significant Damage.**

50.     On or about August 3, 2023, Essence began its routine review process where it would move to capture the plan benefits in a written amendment for plan year 2024.

51.     An amendment is necessary in order to capture the specific benefits structure for any given plan year. Furthermore, CMS requires that the benefits structure be contracted for in writing.

52.     On or about August 15, 2023, Essence received the first draft of what would later become the Seventh Amendment to the DSA (the "**Seventh Amendment**") with DentaQuest, which, to Essence's surprise, reflected a rate structure, previously rejected, with 100% of the risk of loss allocated to Essence.

53.     Believing this was an inadvertent error, Essence pointed out the issue to DentaQuest and asked why the rate structure in the proposed Seventh Amendment was contrary to the April 21 Structure. To Essence's amazement, DentaQuest informed Essence that it never agreed to the April 21 Structure, and instead, indicated that it intended to revert back to its prior April 20 proposal, which had Essence (not DentaQuest) absorbing 100% of the risk share.

54.     With little time to attempt to correct the issue before Medicare Open Enrollment began, Essence and DentaQuest engaged in weeks of discussions during which Essence implored

11

DentaQuest not to walk back the agreed April 21 Structure.

55.    On September 28, 2023, mere days before Medicare Open Enrollment was set to begin, DentaQuest firmly stated that it would not honor the agreed April 21 Structure. After which, DentaQuest's account management team completely stopped responding to correspondence from Essence.

56.    By that time, it was simply too late for Essence to replace DentaQuest as its dental service provider given the looming Medicare Open Enrollment deadline.

57.    Moreover, Essence had already publicly marketed and highlighted its 2024 partnership with DentaQuest further tying Essence's hands.

58.    Out of time to find an alternate provider, Essence was forced to implement a self-insured rate structure.

59.    On December 15, 2023, the parties entered into the Seventh Amendment, which provided for the self-insured rate structure instead of the April 21 Structure.

60.    In light of DentaQuest's refusal to adjudicate claims in accordance with the April 21 Structure and forcing Essence to adopt a self-insured structure, Essence suffered in excess of $16,700,000 in damages.

**FIRST CAUSE OF ACTION**
**(Negligent Misrepresentation)**

61.    Essence incorporates the allegations found in the preceding paragraphs of this Complaint as if fully set forth herein.

62.    DentaQuest represented falsely to Essence that it would honor the April 21 Structure in order to induce Essence to select DentaQuest as its exclusive dental service provider for its 2024 Medicate Advantage plans.

63.    DentaQuest knew, or should have known, that Essence would rely on this

12

representation when preparing its Medicare Advantage bid for 2024.

64.     Essence relied on DentaQuest's misrepresentation that it would honor the April 21 Structure and finalized its Medicare Advantage bid with DentaQuest as its exclusive dental service provider and with the April 21 Structure.

65.     The foregoing false representations were made by DentaQuest with failure to exercise reasonable care or competence in communicating the information.

66.     As a direct and proximate result of the foregoing, Essence has suffered, and will continue to suffer, damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Fraudulent Inducement)

67.     Essence incorporates the allegations found in the preceding paragraphs of this Complaint as if fully set forth herein.

68.     DentaQuest knowingly and intentionally misrepresented that it intended to honor the April 21 Structure.

69.     DentaQuest made this knowingly false representation to Essence to induce Essence into agreeing to use DentaQuest as its exclusive dental service provider for 2024.

70.     Relying on DentaQuest's representation to apply the April 21 Structure, Essence finalized its 2024 Medicare Advantage bid with DentaQuest as its exclusive dental service provider and with the April 21 Structure.

71.     DentaQuest, however, refused to honor the April 21 Structure.

72.     When DentaQuest refused to honor the April 21 Structure, Medicare Open Enrollment was mere days away, and thus it was too late for Essence to find a new dental service provider.

73.     Out of time to find an alternate provider, Essence was forced to implement a self-

4898-8394-8587, v. 1

insured rate structure instead of the previously agreed April 21 Structure.

74.     As a result, Essence paid out $16,700,000 more in 2024 dental claims to its plan members than it would have had DentaQuest honored the April 21 Structure and adjudicated claims in accordance therewith.

75.     As a direct and proximate result of the foregoing, Essence has suffered, and will continue to suffer, damages in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**(Promissory Estoppel)**

76.     Essence incorporates the allegations found in the preceding paragraphs of this Complaint as if fully set forth herein.

77.     DentaQuest made a clear and unambiguous promise to Essence that it would honor the April 21 Structure included in Essence's 2024 Medicare Advantage bid. DentaQuest knew that Essence would rely on this promise in finalizing its 2024 Medicare Advantage bid.

78.     Essence reasonably and foreseeably relied on DentaQuest's promise that it would honor the April 21 Structure and finalized its 2024 Medicare Advantage bid with DentaQuest as its exclusive dental service provider and with the April 21 Structure.

79.     Despite that clear and unambiguous promise, DentaQuest refused to honor the April 21 Structure after it was too late for Essence to find another dental service provider before Medicare Open Enrollment began.

80.     Out of time to find an alternate provider, Essence was forced to implement a self-insured rate structure instead of the previously agreed April 21 Structure.

81.     As a direct and proximate result of the foregoing, Essence has suffered, and will continue to suffer, damages in an amount to be determined at trial.

4898-8394-8587, v. 1

## PRAYER FOR RELIEF

**WHEREFORE**, Essence respectfully asks that this Court:

A.     Enter judgment for Plaintiff and against Defendants on each of the counts
listed above;

B.     Award Plaintiff damages against Defendants in an amount to be determined
at trial, but in no event less than $16,700,000;

C.     Award Plaintiff pre-judgment and post-judgment interest; and

D.     Grant Plaintiff such other and further relief as this Court may deem just and
proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Essence demands a trial by jury in this

action of all issues so triable.


Dated: March 19, 2025                    ESSENCE HEALTHCARE, INC.,
                                         By its attorneys,

                                         */s/ Andrew R. Dennington*
                                         Andrew R. Dennington (BBO #666892)
                                         CONN KAVANAUGH ROSENTHAL PEISCH &
                                         FORD, LLP
                                         One Federal Street, 15th Floor
                                         Boston, MA 02110
                                         Tel: (617) 482-8200
                                         adennington@connkavanaugh.com


                                         /s/ *Steven L. Penaro*
                                         Steven L. Penaro (*pro hac vice* forthcoming)
                                         Kristen C. Kuan (*pro hac vice* forthcoming)
                                         ALSTON & BIRD LLP
                                         90 Park Avenue
                                         New York, New York 10016
                                         Tel: (212) 210-9400
                                         steve.penaro@alston.com
                                         kristen.kuan@alston.com